IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                Plaintiff,

v.

$39,000.00 IN UNITED STATES
CURRENCY, and

$32,000.00 IN UNITED STATES
CURRENCY,

                Defendants *in rem*.

Civil Action No. 20-cv-591

**JURY TRIAL REQUESTED**

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this Verified Complaint for Forfeiture *In Rem* in

accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or

Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action under 21 U.S.C. § 881(a)(6) to forfeit and condemn to the

use and benefit of the United States of America moneys furnished or intended to be furnished by

persons in exchange for a controlled substance or proceeds traceable to such an exchange, or

moneys used or intended to be used to facilitate violations of Title II of Pub. L. 91-513,

commonly called the Controlled Substances Act, as amended, codified at 21 U.S.C. § 801, *et seq.*

2.      As further described below, on or around September 18, 2019, Armando Flores

Sanchez purchased two airplane tickets from Seattle, Washington, to Atlanta, Georgia, for

himself and his brother Marco Antonio Flores.  The flight was scheduled to depart less than 12

hours after Sanchez bought the tickets. Two days later, Sanchez and Flores boarded an Amtrak train for the first leg of a four-day voyage from Atlanta to Tacoma, Washington, that included a stop to change trains in Washington, D.C. The tickets were paid for in cash within hours of the first train's departure. Sanchez and Flores also paid cash to upgrade their reservations to include sleeper cars for one leg of the trip.

3.       Law enforcement began investigating the suspicious cross-country travel itineraries, which were consistent with known patterns of drug- and money-courier activity. When Flores and Sanchez arrived in Washington, D.C., on September 22, 2019, a narcotics-detection K-9 alerted to the presence of narcotics in their checked baggage, which was then searched. The checked bags contained a few clothing and toiletry items – items that did not appear consistent with a multiple-day-long cross-country voyage.

4.       Law enforcement conducted a consensual interview of Flores and Sanchez in a public waiting area of Union Station in Washington, D.C. During the consensual interview, the men consented to searches of their carry-on baggage. The searches of the carry-on baggage uncovered the defendants *in rem* – $32,000.00 in U.S. currency in one of the bags, and $39,000.00 in U.S. currency in the other bag. The currency consisted largely of $20 bills that were bundled, wrapped in rubber bands, and concealed. The K-9 officer presented his certified narcotics-detection K-9 with the currency, and the K-9 alerted to the presence of narcotics.

5.       When law enforcement questioned Flores and Sanchez about the reasons for their travel, the origins of the currency they were carrying, and the reasons they were carrying it, among other things, the brothers provided inconsistent information. Some of the information that Flores and Sanchez provided was inconsistent with information that law enforcement gathered during additional investigation after the consensual encounter. Based on the K-9 alerts,

2

the men's inconsistent stories, and their suspicious travel, law enforcement seized the currency citing probable cause to believe that the currency was involved in drug-trafficking.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

7.      Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. § 1355(b)(l) and 28 U.S.C. § 1395(b), because this is a forfeiture action or proceeding brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, and because a civil proceeding for the forfeiture of property may be prosecuted in the district in which the property is found.

## THE DEFENDANTS *IN REM*

8.      The defendants *in rem* consist of: (1) $39,000.00 in U.S. currency seized in Washington, D.C., from Marco Antonio Flores on September 22, 2019, and (2) $32,000.00 in U.S. currency seized in Washington, D.C., from Armando Flores Sanchez on September 22, 2019.  The funds are on deposit in the Seized Asset Deposit Fund Account, held by the U.S. Marshals Service.  The United States has the defendants *in rem* in its possession, custody, and control.

## FACTS

### I.      The Suspicious Travel

9.      On September 18, 2019, at approximately 9:30 p.m., Sanchez paid $574.00 for two airplane tickets – one for himself, and one for Flores – for a one-way flight from Seattle, Washington, to Atlanta, Georgia, with a layover at the Dallas-Fort Worth Airport.  The flight was scheduled to leave Seattle at 7:30 a.m. the next morning.

10.     On Saturday, September 21, 2016, Sanchez and Flores paid $864.00 in cash for two one-way Amtrak train tickets from Atlanta, Georgia, to Tacoma, Washington, under Amtrak reservation PNR 18C048.  They purchased the tickets for the voyage approximately six hours before the first train departed Atlanta.  Sanchez and Flores then paid $268.00 in cash to upgrade the reservation to include a sleeper car for the third leg of the trip from Chicago, Illinois, to Seattle.

11.     The brothers were scheduled to make a nearly four-day train trip from Atlanta to Tacoma.  The first train was scheduled to leave Atlanta on Saturday, September 21, 2019, and arrive in Washington, D.C., the next day at about 10 a.m.  The second train was scheduled to leave Washington, D.C., on Sunday, September 22, 2019, and arrive in Chicago the next day at about 8:45 a.m.  The third train was scheduled to leave Chicago on Monday, September 23, 2019, and arrive in Seattle, on Wednesday, September 25, 2019.  The final train was scheduled to depart Seattle that same day, and arrive in Tacoma approximately 40 minutes later.

12.     Seattle and Atlanta are known narcotics source cities.  To avoid detection by law enforcement, drug and money couriers travelling to and from narcotics source cities often make last-minute and unconventional travel arrangements.  For example, taking circuitous instead of direct routes, using different methods of travel for the departure and return trips, and purchasing tickets only hours before departure all indicate an intent to avoid detection by law enforcement.  In addition, couriers often use cash to avoid being identified and linked to suspicious travel.

## II.     K-9 Alerts to Checked Baggage

13.     An Amtrak investigator conducting a routine manifest check became suspicious of Flores and Sanchez's itinerary and referred the matter to an Amtrak K-9 unit for potential investigation or interdiction.  That K-9 unit alerted DEA agents.

14.     On September 22, 2019, after Flores and Sanchez's train arrived in Washington, D.C., the K-9 unit conducted a sweep of the baggage storage area, which contained rows of shelves holding several travelers' bags.  The K-9 was a certified narcotics-detection K-9 able to detect the odor of narcotics.  As the K-9 unit entered the storage area, the K-9 started pulling through the middle row of shelves toward two bags that were stacked one on top of the other on a bottom shelf.  The K-9 alerted to the presence of narcotics in the top bag.  The K-9 officer then removed the top bag from the shelf to allow the K-9 to inspect the bottom bag.  The K-9 also alerted to the presence of narcotics in the bottom bag.

15.     The K-9 officer then searched both bags.  Inside the top bag were a few items of clothing and a black, Coach-brand satchel.

16.     The bottom bag contained a few items of clothing and a black and red Adidas-brand duffel bag that was folded.

17.     Both the top and bottom bags had baggage tags that were associated with Flores and Sanchez's Amtrak reservation number – PNR 18C048.  Both of the bags' tags were signed "Armando."

### III.     The Consensual Interviews and Searches

18.     After conducting the baggage search, the K-9 unit and DEA agents approached Flores and Sanchez, who were seated in the seating area and agreed to speak with law enforcement.  Both Flores and Sanchez had backpacks with them and appeared nervous as law enforcement approached them.

19.     During the interview, Flores and Sanchez stated that they were brothers and had travelled to Atlanta to visit their sister, who had just given birth.  Both men initially denied checking any baggage, but admitted that they had checked baggage when asked a second time.

20.     Both Flores and Sanchez consented to searches of their backpacks. Flores's backpack contained a small white cloth that concealed a large bundle of U.S. currency. A separate pocket of Flores's backpack contained a black T-shirt that was wrapped in a white towel and concealed three additional large bundles of U.S. currency. Flores explained that small rubber bands wrapped bundles of $1,000.00, and those bundles were wrapped together with larger rubber bands in bundles of $10,000.00. Flores's backpack contained $39,000.00, consisting primarily of $20 bills.[1]

21.     The way that this large amount of low-denomination currency was wrapped and bundled with rubber bands and concealed is consistent with common methods of transporting drug-trafficking proceeds. In addition, the K-9 officer presented the K-9 with the bundles of money found in Flores's backpack, and the K-9 alerted to the presence of narcotics.

22.     Before searching Sanchez's backpack, the K-9 officer presented it to the K-9, and the K-9 alerted to the presence of narcotics. Sanchez's backpack contained several large bundles of $20 bills, which were rubber-banded together and concealed in clothing, similar to the currency found in Flores's backpack. A separate compartment of Sanchez's backpack contained additional bundles of $20 bills which were also wrapped with rubber bands. Sanchez's backpack contained $32,000.00, consisting entirely of $20 bills.

23.     The way that this large amount of low-denomination currency was wrapped and bundled with rubber bands and concealed is consistent with common methods of transporting drug-trafficking proceeds. In addition, the K-9 officer presented the K-9 with the currency, and the K-9 alerted to the presence of narcotics on it.

---

[1] The $39,000.00 discovered in Flores's backpack consisted of: $10 bills (2); $20 bills (1,734); $50 bills (8); and $100 bills (39).

24.     Flores and Sanchez provided inconsistent statements when law enforcement questioned them about their travel, the currency, and their work and income histories.  In addition, the information that they provided to law enforcement during the consensual encounter was inconsistent with information law enforcement obtained after additional investigation.

25.     After the consensual interview and currency seizure, law enforcement left the waiting area and Flores and Sanchez continued their scheduled travel.

## IV.    Administrative Claims

26.     After the DEA seized the currency, it initiated administrative forfeiture proceedings.  Sanchez filed an administrative claim to the entire $71,000.00, and signed it under penalty of perjury.  In the claim form that Sanchez submitted, he stated that a long-term friend passed away and left him the currency.

27.     Sanchez stated that his friend left him special instructions to retrieve the money and that because his friend's death and the news of the inheritance was so sudden, he had to arrange last-minute travel.  Sanchez stated in his claim that he worked "paycheck to paycheck," lived in a small studio apartment, and was "not well prepared for the amount [of money]" that his friend left him.

28.     Sanchez attached to his claim a letter, dated January 12, 2019, purportedly from a person named "Max Gonzalez."  Among other things, the letter stated that Mr. Gonzalez had died and left Sanchez $39,000.00, consisting of $30,000.00, plus "an additional $9,000.00 to cover any expenses that" Sanchez incurred in arranging for the pickup of the currency.  The letter stated that Mr. Gonzalez left Sanchez cash "so it's at [Sanchez's] disposal for what [Sanchez] need[ed] with no issues and not having to deal with any banks."  The letter from "Max Gonzalez," did not discuss the other $32,000.00.

29.    Flores also submitted an administrative claim to the $39,000.00 found in his backpack.  In his claim, he alleges that he is the "sole owner" of the currency and that it belongs to no one else.

30.    Neither Flores nor Sanchez mentioned a cash inheritance or deceased family friend during their encounter with law enforcement on September 22, 2019.

31.    No one else filed claims to the defendants *in rem*.  The time period under 18 U.S.C. § 983(a)(2)(B) for filing a claim has expired.

**COUNT ONE**
21 U.S.C. § 881(a)(6)

32.    The factual statements made in paragraphs 1 through 31 are re-alleged and incorporated by reference herein.

33.    The defendant property is money. negotiable instruments, securities, and a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys negotiable instruments, or securities used or intended to be used to facilitate a violation of 21 U.S.C. § 801 *et seq.*

34.    Accordingly, the defendant property constituting $71,000.00 is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**WHEREFORE**, the United States respectfully requests that, as to the defendants *in rem*,

due process and a warrant of arrest *in rem* issue according to law; that, pursuant to law, notice be

provided to all interested parties to appear and show cause why the forfeiture should not be

decreed and the defendants *in rem* be condemned as forfeited to the United States of America;

and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

Dated: February 28, 2020                    COUNSEL FOR THE
                                            UNITED STATES OF AMERICA
Washington, D.C.
                                            TIMOTHY J. SHEA
                                            D.C. Bar No. 437437
                                            United States Attorney
                                              for the District of Columbia


                                            /s/ Arvind K. Lal
                                            Daniel J. Olinghouse
                                            Special Assistant United States Attorney
                                            Iowa Bar No. 60829
                                            Arvind K. Lal
                                            Assistant United States Attorney
                                            D.C. Bar No. 389496
                                            National Security Section
                                            555 4th Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-7785; Daniel.Olinghouse3@usdoj.gov
                                            (202) 252-7688; Arvind.Lal@usdoj.gov

## VERIFICATION

I, Andrew P. Harris, a Special Agent with the Drug Enforcement Administration, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct.

Executed: 2/28/2020

Washington, D.C.

/s/ Andrew P. Harris
_____
Andrew P. Harris
Special Agent
United States Drug Enforcement Administration

# CIVIL COVER SHEET

JS-44 (Rev. 5/12 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | $39,000.00 IN UNITED STATES CURRENCY, and $32,000.00 IN UNITED STATES CURRENCY |

| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Arvind K. Lal, Assistant U.S. Attorney U.S. Attorney's Office for the District of Columbia 555 Fourth Street, N.W. Washington, D.C.  20530 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- (○) 2 U.S. Government Defendant
- (○) 3 Federal Question (U.S. Government Not a Party)
- (○) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in This State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

**○ A.  Antitrust**

- ☐ 410  Antitrust

**○ B.  Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

**○ C.  Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**(●) E.  General Civil (Other)        OR        ○ F.  Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 27 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☒ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**Other Statutes**
- ☐ 375 False Claims Act
- ☐ 400 State  Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization

- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○  **G.**  *Habeas Corpus/ 2255* | ○  **H.**  *Employment Discrimination* | ○  **I.**  *FOIA/Privacy Act* | ○  **J.**  *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○  **K.**  *Labor/ERISA (non-employment)* | ○  **L.**  *Other Civil Rights (non-employment)* | ○  **M.**  *Contract* | ○  **N.**  *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Remand from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

21 U.S.C. § 881(a)(6) - Controlled Substances Act

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** <br> **JURY DEMAND:** | Check YES only if demanded in complaint <br> YES  ☒   NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐      NO ☐ | If yes, please complete related case form |
|---|---|---|---|

DATE: _____2/28/2020_____   SIGNATURE OF ATTORNEY OF RECORD _____/s/ Arvind K. Lal_____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**    CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                    Plaintiff,                           Civil Action No. 20-cv-591

v.

$39,000.00 IN UNITED STATES
CURRENCY, and

$32,000.00 IN UNITED STATES
CURRENCY,

                    Defendants *in rem*.

## WARRANT FOR ARREST *IN REM*

TO:   THE UNITED STATES MARSHAL'S SERVICE AND/OR ANY OTHER DULY
AUTHORIZED LAW ENFORCEMENT OFFICER:

         WHEREAS a Verified Complaint for Forfeiture *In Rem* has been filed in the United
States District Court for the District of Columbia, on the 28th day of February, 2020, alleging that
the above defendant properties are subject to seizure and forfeiture to the United States pursuant
to 18 U.S.C. § 981(a)(1)(C);

         YOU ARE, THEREFORE, HEREBY COMMANDED to serve the defendant properties,
thus bringing, within the jurisdiction of the Court, said defendant properties, more fully
described as:

         **$39,000.00 IN UNITED STATES CURRENCY, and**

         **$32,000.00 IN UNITED STATES CURRENCY**

         YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file
the same in this Court with your return thereon, identifying the individuals upon whom copies
were served and the manner employed, unless, pursuant to Rule G(3)(c)(ii)(A) of the
Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the
defendant properties are in the government's possession, custody, or control.

Dated: February 28, 2020

_____
Clerk of the Court


By:   _____
Deputy Clerk